STATE, *ex rel.* CHARLES J. DEEB, v. A. G. CAMPBELL, Circuit Judge.

167 So. 805.

En Banc.

Opinion Filed November 14, 1935.

Rehearing Denied January 14, 1936.

*Philip D. Beall, H. H. Wells* and *B. K. Roberts,* for Petitioner;

*E. Dixie Beggs, Jr.,* State Attorney, for Respondent.

DAVIS, J.—Petitioner's ward, George J. Deeb, was arrested and committed to the County Jail of Escambia County on the charge of murder and thereafter released on bond to await the action of the Grand Jury. See: Deeb v. Gandy, 110 Fla. 283, 148 Sou. Rep. 540. While at large on bail, and prior to the convening of the Escambia County Grand Jury, Deeb was haled before the County Judge of Leon County in statutory insanity proceedings (Sections 3654-3657 C. G. L., 2308-2311 R. G. S.), adjudged insane therein and committed in due form of law to the Florida State Hospital for the Insane.

After Deeb had been indicted by the Grand Jury of Escambia County for murder in the first degree, upon petition of a relative, Deeb was taken from the State Insane Hospital on a writ of habeas corpus issued by the Circuit Judge of Leon County and upon hearing before said Judge was ordered committed to special custody for the purpose of being particularly treated for his mental illness outside of the State Hospital for the Insane.

Subsequently, Deeb was taken from the custody of a private sanitarium in which his judicially appointed custodian had placed him for treatment, upon criminal process for that purpose issued by the Circuit Court of Escambia

County. For proceedings incident to this phase of the case see State, *ex rel.* Deeb, v. Fabisinski, 111 Fla. 454, 152 Sou. Rep. 207, where the intermediate steps of the case will be found reviewed.

Afterwards, Deeb was placed upon trial on the murder indictment against him after having secured a change of venue in his case from Escambia County to Okaloosa County, was found guilty and sentenced for manslaughter, and upon writ of error to this Court obtained a reversal of his conviction. See: Deeb v. State, 118 Fla. 88, 158 Sou. Rep. 880.

Upon the going down of the mandate and the call of Deeb's case for a new trial (the accused being at the time at large upon a supersedeas bond given incident to his appeal from his conviction), the Circuit Judge holding the term of court at which the case was due to be called for retrial announced that, in view of the accused having applied for a trial continuance owing to the fact that his chief counsel, Hon. Philip D. Beall, was on duty in the State Legislature as a member of the State Senate (Section 4356 [1] C. G. L., 1934 Sup. Chap. 15995, Acts 1933, Laws of Florida), a motion by the State's Attorney would be entertained by him as Circuit Judge, looking toward the issuance of a commitment of said defendant Deeb to jail to be held for his retrial, or to the State Hospital for the Insane as a ward of the Court pending his restoration to sanity of sufficient degree to enable him to be lawfully tried under the circumstances referred to in this Court's judgment of reversal which had held him so insane as to be unfit to be tried at the time the previous trial was held.

In its opinion reversing the manslaughter conviction, the Supreme Court in discussing Deeb's mental status, had said (158 Sou. Rep. text p. 882):

"It is conceivable that a person may at the time of committing an act be conscious of its nature and character as a social offense, and yet if called upon to plead to the criminal accusation and rationally conduct a defense he might be utterly incapable by reason of progressing primary dementia to do so. He might mislead his counsel as to facts, misinform them as to his relations with other actors in the legal drama, and be utterly unreliable as a witness in his own behalf.

"The same humanity of the law which will stay the execution of one convicted of crime exists to prevent one being tried for crime where insanity in the accused *vel non* is the question. Where in one case the execution of the convict would be a brutal, uncivilized performance, in the other it would be a malicious mockery of judicial procedure. * * *

"In the case at bar the accused had been adjudged to be insane, and was confined in the criminal ward or place set aside for the confinement of the criminal insane at the State Hospital for the Insane. He had not been discharged as cured or improved. He was released to a guardian only that he might be taken to a sanitarium where he could be specially treated for the peculiar type of insanity from which he suffered. He was taken from that place by the sheriff without any order or certificate from the hospital authorities that Deeb was either well or improved. Therefore, when Deeb was called to plead to the indictment he was not presumed to be a sane person; on the other hand he was presumed to be insane because a person adjudged to be insane is presumed to continue as such until it is shown that sanity has returned. See Jones Co. v. State, 122 Me. 214, 119 A. 577, and extensive note with many citations in 7 A. L. R. 588.

"In that situation the evidence adduced should have es-

tablished the fact of Deeb's return to a sane condition before he could be called upon as a sane person to plead to the indictment and defend the case brought against him.

"In the view we have of the evidence taken upon the question prior to the arraignment and trial of Deeb, so far from establishing that sanity had returned, confirmed the order of his commitment to the hospital for the insane as an insane person whose particular form of dementia made it prudent not only in his own interest but in the interest of the community that he should be confined, his movements watched, and his person guarded to prevent either injury to himself or to others.

"The particular type of mental disease from which he suffers, according to the physicians, is dementia praecox, paranoidal type. It may possibly. be cured, not probably, according to one physician. It is progressive and grows constantly worse usually. He may at one moment be apparently normal and at the next be mentally convulsed by a mere incident of great or small significance."

So the proposition to be decided in this original proceeding in prohibition against the trial judge is: "what are the judicial powers of a Circuit Judge to deal with a prisoner held for trial before the Circuit Court on a charge of manslaughter after a previous conviction has been reversed by the Supreme Court on a finding by the appellate court that the accused was too insane to be legally tried on the indictment pending against him unless the State could affirmatively allege and show that such change had come about in the accused's mental condition as to remove the obstacle to trial found to exist by the Supreme Court as a basis for avoidance of the result of a prior trial?"

Counsel for petitioner here suggest that in view of the peculiar factual situation of Deeb's case, that a *casus*

*omissus* exists in the statutory law governing lunatics held under circumstances such as are here involved and that the Circuit Court before which Deeb's appearance (supersedeas) bond is returnable is without jurisdiction to entertain a motion by the State's Attorney designed to have defendant Deeb kept incarcerated as an insane person pending his retrial on the charge of manslaughter pending against him.

But the Constitution itself takes care of a situation wherein it is necessary for a Court of Criminal Jurisdiction to make orders and issue processes essential to the maintenance and enforcement of its jurisdiction over the accused. Section 11 of Article V of the Constitution expressly provides that the Circuit Courts shall have power to issue all writs proper and necessary to the complete exercise of their jurisdiction. Indeed, had the Constitution failed to so provide, the power would have been inherent in the Court as a governmental arm of the State vested with jurisdiction and charged with the specific duty of exercising trial powers in felony cases wherein the personal appearance of the accused in Court at the time of his trial is constitutionally indispensable to the right of the Court to proceed at all.

It is therefore within the prerogative of the Circuit Court having jurisdiction to try Deeb, to issue its constitutional writ under Section 11 of Article V of the Constitution providing for the apprehension, examination and commitment of Deeb to the Florida State Hospital as an insane person until the proper time comes when he can be legally tried if it ever does come in view of his apparently hopeless mental condition, to which State insane institution the County Judge of Leon County has already adjudicated that he is a fit and competent subject to be committed within the purview of the statutes providing for commitments to that place as a place for confinement and treatment, assuming

that such finding by the County Judge is at all necessary to give the Circuit Court power to sign such commitment.

Thus the effect of the Circuit Court's order, if it should find it necessary and should determine to make one of that import, will be to place the defendant Deeb under a constitutional writ of the Circuit Court to be held under its guardianship and within the reach of the appropriate subsequent processes of the Circuit Court, should it hereafter be made to appear that he is sufficiently competent to stand trial on the indictment against him. See the procedure analogous to this exemplified in: *In Re:* McWilliams, 254 Mo. 512, 164 S. W. Rep. 221; State v. Chandler, 126 S. C. 149, 119 S. E. Rep. 774, which cases we do not necessarily adopt, but suggest as a guide for the Circuit Court in dealing with a situation of this kind.

It is to be assumed that whatever order the Court may make pursuant to the notice of inquiry that it has given will be made only after due investigation of the facts and pursuant to the essential requirements of the law relating to the legal rights of the accused in the premises. If done otherwise, an appropriate remedy is available.

Rule *nisi* in prohibition discharged and proceedings dismissed.

WHITFIELD, C. J., and TERRELL, BROWN and BUFORD, J. J., and GRAY, Circuit Judge, concur.