421 So.2d 35 (1982)
Marc Sanford EASON, Appellant,
v.
The STATE of Florida, Appellee.
No. 80-641.
District Court of Appeal of Florida, Third District.
October 26, 1982.
*36 Bennett H. Brummer, Public Defender, and Barry J. Clyman, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Theda R. James, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, NESBITT and FERGUSON, JJ.
PER CURIAM.
The defendant appeals his conviction of two counts of first degree murder in the deaths of Donna and Ronald Fulks. We affirm.
The main focus of the defense at trial and on appeal is the sanity of the defendant. The defense argues that because of the defendant's prior adjudication of insanity, he was incompetent to stand trial, unable to give a voluntary confession, and entitled to an acquittal by reason of insanity.
It is undisputed that prior to the murders, Eason had been adjudicated insane by a Michigan court and committed to a state mental hospital. The defendant was never discharged from the hospital, nor was there ever an official declaration that his sanity was restored. The defendant simply escaped from the hospital. While there is ordinarily a presumption that a person is sane, where the accused has been previously adjudged insane, there is a presumption that he is still insane. Horace v. Culver, 111 So.2d 670 (Fla. 1959); Corbin v. State, 129 Fla. 421, 176 So. 435 (1937); State v. Campbell, 123 Fla. 894, 167 So. 805 (1936). The presumption is not conclusive, but continues until the prosecution shows that the defendant's sanity has been restored, Campbell, supra; however, to do this, the state is not required to establish that the defendant's sanity was judicially restored. Boone v. State, 183 So.2d 869 (Fla. 1st DCA), cert. denied, 189 So.2d 632 (Fla. 1966).
This presumption is one which attends all stages of the criminal proceeding. Until the presumption is overcome, the accused may not be tried, convicted, or sentenced. Corbin, supra; Campbell, supra, at 806. Therefore, we must decide whether the presumption was overcome at each stage.
Three weeks before trial, on August 17, 1979, a competency hearing was held before the trial court.[1] Testimony was taken from two expert witnesses appointed by the court. Both doctors stated that in their opinion the defendant was competent to stand trial for murder. We find that this testimony was sufficient to overcome the presumption of insanity and hold that the defendant was competent to stand trial.
Similarly, we find that the testimony regarding the defendant's ability to understand the Miranda warnings was sufficient to overcome the presumption of insanity at the time the confession was given to police. Detective Martinez, who obtained the confession from the defendant testified that he appeared to be acting at full capacity. This testimony was buttressed by the opinion of Dr. Jaslow, a psychiatrist who *37 was called in to interview the defendant the same day. His impression of the defendant, formulated during the two-hour interview, was that despite the prior adjudication of insanity, Eason was able to understand his rights and give a voluntary confession. In the doctor's judgment, any psychotic process which formerly existed was not actively present on the day Eason confessed to the murders. Based on this testimony, we find that the state met its burden of overcoming the presumption and must affirm the trial judge's denial of the motion to suppress.
As to the sanity defense, it has long been held that a defendant's mental condition at the time of the offense is a question of fact for the jury. Byrd v. State, 297 So.2d 22, 24 (Fla. 1974); Acree v. State, 153 Fla. 561, 15 So.2d 262 (1943). While there was conflicting evidence on the issue of insanity, the jury found that the defendant was sane at the time he committed the murders. The record contains sufficient evidence to overcome the presumption of insanity and to support the jury's verdict.
Finding no merit in the other issues raised by this appeal, we affirm.
NOTES
[1] Appellant argues that we must reverse because there is no transcript of the April 14, 1978 competency hearing. While it is true that the record does not contain that transcript, another competency hearing was held on August 17, 1979, for which the transcript is available.