LILES, Acting Chief Judge.
This is an appeal from the denial of appellant’s Rule 1.850, 33 F.S.A., motion to vacate and set aside sentence following an evidentiary hearing.
On February 8, 1968, appellant allegedly effected the premeditated murder of two persons in Pasco County. Appellant was subsequently charged on two counts with first degree murder. Prior to his arraignment and plea, the public defender’s office, through Mr. Jack B. McPherson, was appointed to represent him. Mr. James J. Altman, a private attorney, was also appointed to assist in his defense. However, before the case went to trial, Mr. McPherson was appointed assistant state attorney and was replaced as appellant’s counsel by Mr. Edwin J. Ford.
Following arraignment, appellant plead guilty to murder in the second degree on both counts. He was sentenced to life im *151 prisonment on each count, and is now serving those sentences at the state prison.
On August 13, 1970, appellant filed a Rule 1.850 motion to vacate and set aside judgment and sentence in the Circuit Court of the Sixth Judicial Circuit. The circuit court held an evidentiary hearing and denied appellant’s motion. Appellant now seeks review of the denial of his Rule 1.-850 motion and assigns as error five points.
First, appellant urges that he is entitled to a new trial by the mere fact that his original counsel, who had received knowledge of appellant’s defense, became an assistant state attorney with the state attorney’s office which prosecuted appellant. In support of this contention, appellant relies upon Jackson v. State, Fla.App.1970, 234 So.2d 708, and Young v. State, Fla.App.1965, 177 So.2d 345. In answering this contention, we first note that the record reveals that Mr. McPherson did not participate in the prosecution of the case against the appellant. The record also reveals that at the evidentiary hearing Mr. McPherson testified that at no time did he discuss this case with anyone in the state attorney’s office or with any agent or representative of the State of Florida. This case is thus unlike the situation in Young v. State, supra. In Young the assistant state attorney who prosecuted the defendant at the jury trial had previously been a member of the public defender’s office which handled the defendant’s defense. The court held there “that when an attorney has been consulted by a criminal defendant, and later becomes a prosecutor in the same case, the defendant is deprived of the substance of a fair trial and due process.” In the instant case, Mr. McPherson did not “later become a prosecutor in the same case.” Thus the situation which existed in this case does not fit within the prohibited area of Young. It should also be noted that the question in Young was whether the prosecutor at the defendant’s trial had previously served as his defense counsel while a member of the public defender’s staff. The mere fact that the prosecutor had merely been with the public defender’s office was of no consequence. This clearly indicates that the forbidden conduct is for an attorney to have been somewhat directly involved with both the defense and the prosecution of the same case.
In further support of this position, we note that the Supreme Court of Florida in Thompson v. State, Fla.1971, 246 So.2d 760, has ruled on the question “whether employment of a co-defendant’s counsel by the prosecution per se creates a situation inherently violative of due process.” The court there held:
“The twofold prohibition enunciated in Bryan — [1] that a former defender turned prosecutor can neither act directly against his former client in a related matter, nor provide information or assistance for those who would so act— provides a logical answer to the abstract question. The standard for a prosecutor should also be the standard for his staff, and we so hold. Therefore, we find that employment of a former defender on the prosecution staff does not violate due process save where the two prohibitions set out above are violated." (Emphasis added.}
In the instant case, Mr. McPherson, upon his becoming assistant state attorney, did not violate either of the two prohibitions. He neither acted directly against his former client nor provided information or assistance for those who would so act. Hence the mere fact, of and in itself, that appellant’s original counsel became an assistant state attorney was not error.
Instead, both Young and Jackson establish that an evidentiary hearing is required to determine if there has been such a conflict of interest as to result in prejudice to the defendant. Such an evidentiary *152 hearing was had in this case. As noted, Mr. McPherson testified that at no time did he discuss this case with anyone in the state attorney’s office or with any agent or representative of the State of Florida. He further testified that he received by mistake a confidential psychiatric report but that he did not discuss this report with anyone except appellant’s co-counsel, Mr. James Altman. From the record it appears that the appellant was not prejudiced in any way by Mr. McPherson becoming an assistant state attorney. The trial court obviously ruled, and correctly so, that there was no prejudice.
The second point assigned by appellant concerned prejudice to appellant as a result of Mr. McPherson becoming an assistant state attorney. This point has been considered in point one and has already been answered.
As a third point, appellant urges that the judgment and sentence should be set aside in that the record shows that the state was furnished with confidential information, the psychiatric report, concerning the appellant’s mental status, notwithstanding a protective order to the contrary. It is thus contended that appellant’s knowledge of this disclosure may have influenced appellant’s decision to plead guilty to the lesser offense. At the evidentiary hearing, Mr. McPherson testified that this knowledge was not used in an attempt to encourage appellant to enter a plea of guilty of second degree murder and that the psychiatrist’s report was used only by appellant’s counsel, Mr. James Altman. Therefore, the record does not reveal that the disclosure of the report as to the mental status of the appellant influenced his decision to plead guilty to murder in the second degree.
Appellant’s fourth point pertains to his mental status the night of the killings. This point is as a result of a subsequent proceeding against the appellant. On the night of the killings, appellant also kidnapped two other persons. This offense gave rise to the appellant being later charged in 1970 in Hernando County on two charges of kidnapping. In view of these charges, appellant requested and was granted a mental examination. Two psychiatrists examined the appellant and determined that on the night of February 8, 1968, (the night of the murders as well as the kidnapping) he did not know right from wrong. As a result of these determinations as to appellant’s mental condition, the two charges of kidnapping were dismissed. Armed with this new information, appellant now contends that he is entitled to a new trial on the murder charges because of the subsequent finding of his mental condition as being unable to know right from wrong on the night of the murders. However, prior to the appellant’s arraignment and plea in the murder cases, two psychiatrists had examined appellant and indicated, as shown by the record, that appellant did know right from wrong. Therefore, as to the murder charges, appellant’s mental condition had been determined to be such that: he was able to stand trial had he not plead guilty to second degree murder, his plea was made voluntarily and without coercion, and he was competent to know the results and consequences of his plea. The fact that two other psychiatrists later determined that he may have been incapable of knowing right from wrong at the time he committed the offense is not sufficient grounds for a new trial. The subsequent finding does not constitute the essential conditions of newly discovered evidence. Florida East Coast R. Co. v. Knowles, 1914, 68 Fla. 400, 67 So. 122.
Appellant’s fifth point urges that the judgments and sentences should be set aside in that appellant’s plea was induced and/or influenced by promises of psychiatric care. We believe this point is without merit in that it is not shown by the record that the appellant pleaded guilty because of a promise of psychiatric care. It is true, according to the record, that Mr. Altman said he would try to secure psychiatric *153 treatment for the appellant, and the Judge in his sentencing recommended psychiatric care. However, there is no showing that this was used as an inducement for the appellant to plead guilty. The record also reveals that both Mr. Ford and Mr. Altman discussed psychiatric care with the appellant but there is no showing that appellant relied upon this promise or that it did in any way influence appellant’s decision to plead guilty to second degree murder.
For these reasons the denial of appellant’s Rule 1.8S0 motion to set aside and vacate sentence is affirmed.
HOBSON and McNULTY, JJ., concur.

. State v. Bryan, Fla.App.1969, 227 So.2d 221.